PEARSON, Chief Judge.
The City of Miami Beach and its chief building inspector seek review of a summary final judgment in mandamus (69— 1026) and of the peremptory writ of mandamus (69-1027). The judgment was entered upon a motion for summary judgment after the filing of appellants’ return to the alternative writ, a reply to the return, and the deposition of the chief building inspector.
The points on appeal raise the following questions:
(1) Was there sufficient proof of the right of the appellees to bring the petition for mandamus? (2) Does the record establish without issue that the appellees had exhausted their administrative remedy? (3) Is there a genuine issue of material fact raised by the city’s allegation that it had subsequent to the denial of the building permit begun proceedings to take by eminent domain the property involved?
Appellants’ first point urges an insufficient verification of the petition and insufficient proof of the appellees’ right to do business in this state. See § 613.04, Fla.Stat., F.S.A. We hold the verification and proof of compliance with the statute were sufficient. See Hogue v. D. N. Morrison Const. Co., 115, Fla. 293, 156 So. 377, 383, 95 A.L.R. 357 (1934).
Appellants’ second point, which urges a failure to exhaust administrative remedies, rests upon the following factual background. ' In April or May 1968 the appel-lees applied to the City of Miami Beach for a permit to build on the property. The permit was refused because the plan submitted did not meet the parking requirements of the City of Miami Beach. Ap-pellees then applied for a variance of the parking requirement to the Zoning Board of Adjustment, which held a public hearing on May 21, 1968. As a result of the public hearing the variance was granted. This variance was subsequently approved by the city council. Thereafter on a day not specified the petitioners again applied for a building permit in accordance with the previously submitted plan. As to this application the chief building inspector testified as follows:
“Q All right. What happened on that occasion ?
A On that occasion, the plans were —the complete plans had been submitted and they were examined by my department. They were examined by the Public Works Department and approved and some certain changes and recommendations had been made and it was returned to my department — my office to be — for a permit to be issued.
Q All right. Did you issue a permit?
A No, we did not.
Q Why not ?
A I was instructed to not issue a permit by the City Manager’s office.
Q And were you told why you couldn’t issue a permit?
A They said this was a matter of opposition to the permit from some local organization and that the matter was put on the agenda for discussion for the December City Council meeting and I should hold it off until the matter is determined by then.
Q Had the owners or their representatives otherwise complied with all of the requirements, to your knowledge, at the time that they submitted the request for the building permit on this last occasion and to have received the same at that timé?
A Yes, sir.
Q And, as I understand it, the only reason that you refused to grant a permit was because of your instruction from the City Manager not to do so?
A Yes, sir.
*518 Q Did he tell you what the objection was that was coming up before the Council ?
A He said there was — there was an objection before the Council regarding the use of the property for a high rise apartment building and objections to the action of the City Council when they approved it.
Q To your knowledge, has this property been zoned for high rise since 1931?
A Yes, it has.”
The City of Miami Beach in its defense to the motion for summary judgment presented an affidavit of the then city manager of the city. The affidavit stated by way of conclusion that the zoning ordinance of the City of Miami Beach provides an administrative remedy by way of appeal to the Board of Adjustment by an aggrieved party to review a decision of the administrative official charged with the enforcement and interpretation of the zoning ordinance. A certified copy of § 22 of the Zoning Ordinance is attached to the affidavit. This section provides as to the Board of Adjustment as follows:

“Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance, the Board of Adjustment shall •have the power in passing upon appeals, to vary or modify any regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures, or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.
“The Board shall not vary or modify any regulation or provision of this Ordinance until a public hearing has been held. Notice of such hearing shall be given by mail to the owners of record of land lying within 375 feet of the property the use, construction or alteration of which is proposed to be changed.”
The question thus presented is whether the appellees were required to appeal to the Board of Adjustment in order to have a clear legal right to the issuance of a building permit. We think the trial judge correctly decided as a matter of law that the chief building inspector was not entitled to exercise any discretion in the issuance of a permit. The proposed plan, except for the portion dealing with parking facilities, had already been approved. Once the variance concerning the parking facilities was granted, the appellees had a clear legal right to the issuance of a permit. The record as above quoted affirmatively shows that the inspector refused to issue a permit because of a hold order placed by the city manager and not because of any question of compliance with the building or zoning ordinances of the City of Miami Beach. In addition a reading of the ordinance attached to the affidavit in opposition to the motion for summary judgment clearly shows that the Board of Adjustment has jurisdiction only in matters of zoning. Since no question of zoning was involved in this case, no appeal to the Board of Adjustment was necessary. The present case therefore falls within the rule that the exhaustion of administrative remedies doctrine has no application if the facts before the court make it clear that any further action or appeal by the person seeking the performance of an administrative duty would be unnecessary or useless (City of Miami Beach v. Sunset Islands 3 & 4 Property Owners Ass’n, Fla.App.1969, 216 So.2d 509; 73 C.J.S. Public Administrative Bodies and Procedure § 46). Compare the facts of the present case with those of City of Hollywood v. Pettersen, Fla.App.1965, 178 So.2d 919.
Appellants’ third point concerns the effect upon appellees’ legal right to a building permit of the action by the City of Miami Beach in preparing to take the subject property by proceedings in eminent *519 domain. The following schedule of events is set out by the parties in their discussion of this issue. The appellees filed a petition for an alternative writ of mandamus on January 13, 1969. This was an unspecified time after the refusal of the chief building inspector to issue the permit under the instruction from the city manager. An alternative writ of mandamus was issued by the court on January 14. On January 15 the City Council of the City of Miami Beach passed a resolution authorizing the city attorney to institute proceedings to take the subject property by eminent domain. On January 22 the trial judge entered an order granting the appellants’ motion to quash the alternative writ. At the same time the court granted appellees’ oral motion to amend the alternative writ and issued an amended alternative writ. Appellants based their motion to quash upon the ground that the wording of the alternative writ was insufficient. On January 24 the city filed the condemnation proceedings authorized by the resolution of January 15. These proceedings are presently pending. The peremptory writ under review was entered August 22, 1969, upon appellee’s motion for summary judgment.
Appellants point out that it is a principle of the law of condemnation that a landowner has a legal duty to mitigate his damages upon the institution of a proceeding for condemnation. 26 Am.Jur.2d, Eminent Domain, § 155; 4 Nichols on Eminent Domain, § 14.22, p. 525 (3rd ed. 1962). They point out that failure to mitigate precludes recovery for that portion of damages which could have been avoided. Upon these premises appellants urge that it was unreasonable for the trial court to order the issuance of a permit to the appel-lees, because if the appellees did construct a building in the face of the pending condemnation proceedings, they would be wasting their money and probably the city’s money as well.
The question now presented is whether the pendency of the proceedings in eminent domain created a genuine issue as to appellees’ legal right to the building permit. Appellees’ position is that their right to the building permit was vested at the time of the application and their right to the issuance of the writ of mandamus was vested at the time they filed their petition and therefore no later action by the city could affect the right to the building permit. We think this argument overlooks the fact that mandamus is a remedy which is subject to equitable principles. State ex rel. Robert L. Turchin, Inc. v. Herin, Fla.1957, 99 So.2d 578; State ex rel. Mann v. Burns, Fla.App.1959, 109 So.2d 195. The courts have in similar cases considered public action which occurred after the application for the permit and after the filing of the petition for mandamus. In Aiken v. E. B. Davis, Inc., 106 Fla. 675, 143 So. 658 (1932), the trial judge found: “The actions of the municipality are sufficient to overcome the presumption that the ordinance — as it affects relator — was in any way, prompted by considerations of public safety, health, welfare or morals.” 143 So. at 659. Based upon this finding the peremptory writ was granted and the Supreme Court affirmed, although there is language in the opinion which suggests that the right to the permit could not be affected by a subsequent legislative act. See also Sharrow v. City of Dania, Fla.1955, 83 So.2d 274. In City of Miami v. State ex rel. Ergene, Inc., Fla.App.1961, 132 So.2d 474, this court reversed a judgment awarding a peremptory writ of mandamus because the city had validly passed an ordinance revoking the permit. The court said:
“We do not view the circumstances in this case as constituting arbitrary or bad faith acts on behalf of the city as were the circumstances in Aiken v. E. B. Davis, Inc., 106 Fla. 675, 143 So. 658; Harris v. State ex rel. Wester, 159 Fla. 195, 31 So.2d 264; Broach v. Young, Fla.1958, 100 So.2d 411.”
In the instant case the petition was filed on January 13, and an alternative writ was issued on January 14. The *520 amended alternative writ issued January 22. But before the issuance of the effective alternative writ of mandamus the city by its resolution of January 15 had given public notice of its intention to condemn the land. We therefore conclude that there is a genuine issue of material fact, namely, whether the decision to institute eminent domain proceedings was either an arbitrary or a bad faith act of the appellant city. The existence of such an issue renders the entry of summary judgment improper.
In view of our holding that the trial court correctly determined there was no issue concerning (1) appellees’ alleged lack of standing to seek mandamus, and (2) appellees’ alleged failure to exhaust administrative remedies, the trial court may upon remand enter a partial summary judgment upon those issues. The summary final judgment is reversed in part, the peremptory writ of mandamus is quashed, and the cause is remanded for further proceedings.
Affirmed in part, reversed in part, and remanded.