297 So.2d 573 (1974)
George C. MILLER, Jr., et al., Appellants,
v.
Bess MacGILL et al., Appellees.
No. U-374.
District Court of Appeal of Florida, First District.
June 27, 1974.
Rehearing Denied August 7, 1974.
*574 James L. Padgett, of Davis, Asbury & Padgett, Crescent City, and Alan B. Fields, Jr., of Dowda, Hedstrom & Fields, Palatka, for appellants.
A.W. Nichols, III, Palatka, for appellees.
RAWLS, Chief Judge.
The disagreement between these parties involves appellants' attempt to construct a convenience store at the intersection of State Road 19 and Silver Lake Drive, an unincorporated area of Putnam County known as the "Tri-Lake Area". On September 23, 1971, appellees filed an individual-class action to temporarily and permanently enjoin the construction of the convenience store, and on the same day the trial court granted appellees their prayer for a temporary injunction. The extensive legal skirmishing culminated on November 1, 1973, when the trial judge rendered a final judgment permanently enjoining construction of the store building.
The basic point on appeal questions the legality of the temporary and permanent injunction. Appellants-defendants in this cause are Miller Brothers, hereafter referred to as Miller, and Lake Crystal Properties, Inc., hereafter referred to as Properties. The appellees constitute a majority of the registered free holders and owners of land in the Tri-Lake Area of Putnam County. Within two years prior to the 19th day of November, 1971, Miller evidenced interest in the instant site. On May 17, 1971, Miller initiated an economic survey of the area as to the feasibility of establishing a convenience store on the site. The area survey, with all homes plotted on same, supported the economic feasibility of the project. On July 2, 1971, a topographic survey on the property was ordered for the purposes of layout for construction of the proposed convenience store. During the middle or latter part of July, 1971, a proposed lease was drawn and submitted to the landowner by Miller. In June or July of 1971, agreement was reached between Miller and the landowner for construction of the building. Around the first of August, 1971, Miller installed a sign on the site publicizing that a Handy-Way convenience store would be constructed on the property. Apparently, the sign served as a catalyst to the residents of the area, because immediately thereafter a petition to prohibit the *575 construction of the convenience store was circulated.[1] The landowner at this time sold the controverted site to Properties. On September 14, 1971, a lease was executed between Properties and Miller and on September 20, 1971, the proposed building was laid out on the property and concrete footings were poured for same. On the afternoon of September 14, 1971, after the lease was signed, the Board of County Commissioners appointed a zoning commission consisting of five members, three of whom had signed the petition seeking rezoning of the site. Shortly after the footings were poured, on September 23, 1971, appellees filed the instant action which resulted in a temporary injunction being granted by the trial court prohibiting further construction of the building. Almost two years later on June 26, 1973, the Board of County Commissioners enacted a comprehensive zoning ordinance governing the use of all property in Putnam County which precluded the use of the subject property by Miller as planned.
Appellees alleged in their petition for injunction that their surrounding real property would be greatly devalued and would depreciate; they would be deprived of their right to full use and enjoyment of their property; the attendant neon lights and traffic hazards would constitute a public nuisance; and that Miller had begun construction of the store despite knowledge of pending zoning regulations which would prohibit its construction. Appellees wholly failed to prove any one of the foregoing allegations.
The long established rule in this jurisdiction is that before an injunction will issue, it must appear that there is a reasonable probability, not a bare possibility, that a real injury will occur.[2] In Sackett v. City of Coral Gables,[3] the shoe was on the other foot. There, a landowner sought a temporary and permanent injunction to prevent further action by the city commission on a proposed amendment to the zoning code. The appellate court in sustaining the trial court which denied the relief sought stated:
"The instant suit is not a zoning case.
......
"The rule to be applied is that the relief should be awarded only in clear cases, reasonably free from doubt and when necessary to prevent great and irreparable injury, and the complainant has the burden of proving the facts which entitle him to relief."
The Supreme Court in Aiken v. E.B. Davis, Inc.,[4] was faced with a similar situation. In Aiken, the property owner filed an application for a filling station permit. The town had not enacted any zoning ordinance, but a general plan of zoning for the town had been agreed upon by the council. Prior to institution of suit by the landowner, an emergency ordinance was passed by the town council placing the landowner's lot in a residential district wherein the operation of a filling station was prohibited. The trial court entered a preemptory writ of mandamus directing the town to issue a permit allowing the landowner to erect the filling station. Justice Ellis, in concurring with the Supreme Court's affirmance, quoted the trial judge's findings:
"`... I am of the opinion that, in so far as it affects relator and the particular land in question, the municipality acted unreasonably and arbitrarily. The actions of the municipality are sufficient to overcome the presumption that the ordinance *576  as it affects relator  was in any way prompted by consideration of public safety, health, wlefare or morals.'"
In addition, Justice Davis in his concurring opinion stated:
"... [T]he final adoption of the ordinance here involved, in so far as it is attempted to apply it to the relator's already pending mandamus for a permit, and not prospectively for future operation, is in contemplation of law an attempted judicial decree by the legislative power of the city against the then existing rights of the relator, and therefore that such ordinance as applied to relator, is unreasonable and arbitrary. ..." [Emphasis supplied.]
The facts contained in this record are analogous to those in Hough v. Amato.[5] Plaintiff Hough purchased property in St. Augustine which was zoned for "local business". On January 5, 1965, Hough's associate appeared before the city planning commission and advised that he planned to open a "Museum of Tragedies in U.S. History". Hough broadcasted his plans concerning this new enterprise, and like the sign proclaiming a "Handy-Way" store, the publicity served as a catalyst for mustering the "clamor of the crowd" in opposition to the contemplated business venture. Hough expended some $2,000.00 in repairing his building pursuant to valid building permits; however, upon the time arriving to open this museum (April, 1965), he was denied a use permit by the City Fathers. On May 28, 1965, the city passed an "emergency" zoning ordinance for the sole purpose of preventing the opening and operation of the museum. This Court held that Hough was lawfully entitled to utilize his property for operation of the museum and the city was equitably estopped from blocking the opening and operation of same.
The right to devote one's real estate to any legitimate use is protected by the Constitution of the State of Florida.[6] The only basis upon which the landowner's right to the unfettered use of his land must yield is the necessity to protect the public health, safety and general welfare.[7] The zoning power is justified only as an exercise of the general police power.[8] The gist of appellees' grievances is that an overwhelming number of the property owners in the area did not want the convenience store building because they felt that a commercial establishment at this location would interfere with their residential area. Such is not a legally sufficient reason to deprive a landowner of the lawful use of his property and will not support an injunction based on the allegation that surround landowners are at some future date seeking zoning.
We hold that the subject temporary injunction was erroneously granted. At the time that Miller leased the subject property, cleared the lot, erected batten boards and poured concrete footings for construction of the building, the land was not zoned. The landowner was legally entitled to utilize his land for any lawful purpose. The issuance of a temporary injunction by a court is a matter of discretion; however, such a writ is an extraordinary and drastic remedy which should be granted sparingly and with caution and only after plaintiff has proven sufficient facts entitling him to relief. In the instant case, appellees failed to allege and prove such facts as would entitle them to this injunction.[9]
*577 The judgment appealed is reversed with directions that the injunctions be set aside and appellants' right to construct the subject building and operate same not be curtailed or interfered with by appellees.
It is so ordered.
JOHNSON and SPECTOR, JJ., concur.
NOTES
[1] One witness testified that when the petition was circulated he understood the owners were going to build a service station from pulpwood trucks or juke joints on the property. One of the citizens of Tri-Lake Area told a guest who was invited to dinner at the landowner's home that he hoped he choked on his food.
[2] Ruge v. Apalachicola Oyster Canning & Fish Co., 25 Fla. 656, 6 So. 489 (1889).
[3] Sackett v. City of Coral Gables, 246 So.2d 162 (3 Fla.App. 1971).
[4] Aiken v. E.B. Davis, Inc., 106 Fla. 675, 143 So. 658 (1932).
[5] Hough v. Amato, 212 So.2d 662 (1 Fla.App. 1968).
[6] Article I, Section 2, Declaration of Rights, Florida Constitution, F.S.A.
[7] City of St. Petersburg v. Aikin, 208 So.2d 268 (2 Fla.App. 1968) reversed 217 So.2d 315 (Fla. 1968).
[8] Ellison v. City of Fort Lauderdale, 183 So.2d 193 (Fla. 1966).
[9] Sackett v. City of Coral Gables, supra; and Ruge v. Apalachicola Oyster Canning & Fish Co., supra.