## TAFT BROADCASTING COMPANY v RODON, etc., et al.
### Case No. 87-13133 (25)
Eleventh Judicial Circuit, Dade County

August 7, 1987

### APPEARANCES OF COUNSEL

**Clifford A. Schulman, Greenberg, Traurig, Askew,** et al., for plaintiff.

**Eileen Mehta,** Dade County Atty., for defendant.

### OPINION OF THE COURT

PHILIP BLOOM, Circuit Judge.

THIS MATTER came on to be heard on Defendants' Motion to Dismiss Complaint for Writ of Mandamus and the Court, having considered the memoranda of law filed by the parties, having heard argument of counsel and being otherwise duly advised in the premises hereby finds:

1. Plaintiff TAFT BROADCASTING COMPANY (Taft) filed its Complaint seeking issuance of a Writ of Mandamus compelling the Defendants, the Director of the Dade County Building and Zoning Department and Metropolitan Dade County, to issue Taft a certificate of occupancy for the tower expansion in question. The Complaint was filed pursuant to Article V, Section 5 of the Florida Constitution, Section 26.012(2)(a) of the Florida Statutes and Florida Rule of Civil Procedure 1.630. Pursuant to Rule 1.630, this Court entered an order which constituted an alternative writ of mandamus that incorporated the allegations of the Complaint and provided Defendants with thirty (30) days in which to respond and show cause by a peremptory writ of mandamus should not issue. In response to the Alternative Writ, Defendants timely filed a motion to dismiss Plaintiff's Complaint, which is the subject matter of this Order.

2. When ruling on a motion to dismiss, the Court must consider all well-pled allegations within the complaint to be true and must determine the legal sufficiency of the complaint based upon the facts alleged within the "four corners" of the complaint. *Temples v. Florida Industrial Construction Co., Inc.*, 310 So.2d 326, 328 (Fla. 2d DCA 1975); *Holiday Dinner Theatres of America, Inc. v. Bartke*, 281 So.2d 376 (Fla. 2d DCA 1973); *Hembree v. Reaves*, 266 So.2d 362 (Fla. 1st DCA 1972). In addition, for purposes of a motion to dismiss all reasonable inferences are presumed in favor of plaintiff's case. *Orlando Sports Stadium, Inc. v. State ex rel. Powell*, 262 So.2d 881, 883 (Fla. 1972).

3. This Court has reviewed the Defendants' Motion to Dismiss in light of the foregoing legal principles and has determined that it is *not* well-founded. In the motion, Defendants initially challenged the propriety of Plaintiff's Complaint for Writ of Mandamus, contending that mandamus is a "harsh and extraordinary writ" that will only issue upon extraordinary circumstances when a "clear legal right" of the Plaintiff is at issue. The Court does not disagree with this characterization of mandamus but finds, based upon the well-pled allegations of the Complaint and all favorable inferences therefrom, that Plaintiff has alleged sufficient facts to establish the "extraordinary" circumstances of Defendants' inequitable action that can only be adequately remedied by use of this "extraordinary" writ of mandamus.

Plaintiff's Complaint set forth a state of facts that establish a

"classic" case for application of the doctrine of "equitable estoppel" against Defendants. Specifically, Plaintiff alleges that its predecessor in interest applied to the Federal Aviation Administration (FAA) for a "Determination of No Hazard to Air Navigation" in 1981, thereby commencing its application for a 400' increase in height of an existing 1,441' broadcast tower. Notwithstanding the objections of concerned airplane pilots and the Florida Department of Transportation (F.D.O.T.), Plaintiff's predecessor successfully obtained the "Determination of No Hazard to Air Navigation" from the Federal Aviation Administration. In issuing that Determination, the F.A.A. conducted its own on-site survey of flight patterns around the tower in addition to reviewing the applicant's submitted navigational and meteorological surveys and data. After that review, F.A.A. concluded:

> "An aeronautical study of the proposed construction . . . has been completed under the provisions of Part 77 of the Federal Aviation Regulations. Based on the study it is found that the construction would have no substantial adverse effect on the safe and efficient utilization of the navigable airspace by aircraft or in the operation of air navigational facilities. Therefore, . . . it is hereby determined that the construction would not be a hazard to air navigation. . . ."

> .   .   .   .   .   .   .   .   .   .   .   .

> "In summary, the study indicated that, based on available data and on-site surveys, no significant adverse effects on existing or planned instrument or visual flight procedures will occur if the WCIX-TV antenna tower is increased in height to 1,840 feet AMSL [above mean sea level]."

Administrative discretionary review (rehearing) was sought by the Aircraft Owners and Pilots Association (A.O.P.A.) but that petition was denied and the "Determination of No Hazard to Air Navigation" became final with no further appeal taken by any party, including A.O.P.A. or F.D.O.T. It should be noted that the Federal Aviation Administration is the primary governmental agency empowered to review and advise other affected agencies on the air safety impacts of proposed tall structures such as the subject tower extension. The "expertise" of the F.A.A. to conduct such studies and the impact of its conclusions has been judicially recognized and approved. See, Aircraft Owners and Pilots Assoc. v. F.A.A., 600 F.2d 965, 973 (D.C. Cir. 1979); Air Line Pilot's Assoc. Int'l v. F.A.A. 446 F.2d 236 (5th Cir. 1971).

In 1983 Taft, as a successor in ownership, applied to the Dade County Building and Zoning Department for the zoning approval

required to build the proposed tower height extension. To obtain the necessary zoning approval, Taft had to present its proposed expansion at numerous hearings before the Dade County Zoning Appeals Board (ZAB) and the Board of County Commissioners (Commission), eventually culminating in a ZAB decision favorable to Taft, notwithstanding the objections of F.D.O.T., and subsequent denial of the application upon appeal, by the Board of County Commissioners. The Appellate Division of the Eleventh Judicial Circuit reversed that denial, specifically finding that the requested height increase posed no hazard to aviation safety. *See Taft Broadcasting Company v. Metropolitan Dade County*, 15 Fla. Supp. 2d 91, 93 (11th Jud. Cir. Dade County 1985), *cert. denied*, — So.2d — (Fla. 3d DCA 1986).

After the Circuit Court decision and denial of certiorari to review the decision, Plaintiff Taft sought a building permit to construct its tower extension. Dade County, pursuant to a condition of the ZAB resolution reinstated by the Circuit Court, required review and approval by the F.D.O.T. as a condition to its issuance of the building permit. The F.D.O.T. responded with a series of letters dated August 21, 1986, September 12, 1986, and November 6, 1986, that were confusing and conflicting, at best. However, in the letters the F.D.O.T. uniformly took the position that it lacked jurisdiction to either approve or disapprove the tower extension requested by Taft. Based on these letters, Dade County issued a building permit to Plaintiff dated November 21, 1986, authorizing the proposed construction. Accordingly, Plaintiff initiated construction of the tower height extension and had substantially completed the expansion by January 5, 1987, the date of yet another letter from F.D.O.T. on the tower expansion. The correspondence of January 5, 1987, reiterated F.D.O.T.'s position that it did not have jurisdiction to approve or disapprove the tower height increase and stated that the matter was a "local decision." Nevertheless, F.D.O.T.'s1correspondence also reinstated an earlier letter that reflected F.D.O.T.'s continuing concerns over aviation safety. As stated previously, on January 5, 1987, Taft alleges it had either substantially completed or entirely completed the tower expansion at a cost of approximately $800,000. Dade County has subsequently refused to issue a certificate of occupancy for the use of the completed tower facility, based on the County's interpretation of F.D.O.T.'s January 5th written communications on the tower facility.

4. To maintain an action of "equitable estoppel" against a governmental entity, the Plaintiff must plead and ultimately prove: (1) that the Plaintiff has acted in good faith; (2) based upon some act or omission of the government; (3) and has made such a substantial

92

change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right required. *See Hollywood Beach Hotel Co. v. City of Hollywood,* 329 So.2d 10, 15 (Fla. 1976); *Sakolsky v. City of Coral Gables,* 151 So.2d 433 (Fla. 1963). As pled, the Complaint makes out a clear case for the exercise of this Court's extraordinary jurisdiction to enforce Plaintiff's equitable rights against Dade County using the doctrine of equitable estoppel.

5. The use of the legal vehicle of mandamus to compel governmental entities to issue permits or licenses wrongfully denied by the government is neither new nor innovative. *See City National Bank of Miami v. City of Coral Springs,* 475 So.2d 984, 986 (Fla. 4th DCA 1985) (granting partial relief in mandamus action by ordering the issuance of plat approval notwithstanding an invalid condition); *Metropolitan Dade County v. Alford,* 456 So.2d 1317 (Fla. 3d DCA 1984) (affirming the entry of a peremptory writ of mandamus compelling issuance of certificate of competency notwithstanding a change of conditions by board after initial approval). Courts have used the writ of mandamus to compel both the approval of site plans and the issuance of building permits in circumstances when construction has been halted due to governmental indecision or when laws are inequitably applied to a permit applicant, based on the doctrine of equitable estoppel. *See City of Lauderdale Lakes v. Corn,* 427 So.2d 239 (Fla. 4th DCA 1983); *Andover Development Corporation v. City of New Smyrna Beach,* 328 So.2d 231 (Fla. 1st DCA 1976), *cert. denied,* 341 So.2d 290 (Fla. 1976); *City of North Miami v. State ex rel. Keller,* 308 So.2d 558 (Fla. 3d DCA 1975). Indeed, the facts of the present case are particularly similar to the case of *City of Naples v. Crans,* 292 So.2d 58 (Fla. 2d DCA 1974). In *Crans,* the city had issued a foundation building permit for the construction of a restaurant, subject to compliance with F.D.O.T. height requirements. At the time a "moratorium" on further construction was declared, the property owner had not yet secured F.D.O.T.'s approval and the city declined to issue the building permit for the entire building. The city opposed the petition for writ of mandamus on the grounds that the approvals necessary for the proposed facilities had not been obtained from F.D.O.T. The court, after an adversary hearing, determined that the F.D.O.T. requirements had been met but noted that requirement of obtaining an F.D.O.T. permit did not exist within the ordinances of the city and therefore the city lacked standing to assert F.D.O.T. rights. The court ruled that mandamus was proper based upon a theory of equitable estoppel and upon the substantial monies expended by the permit applicant in good-faith

**93**

reliance on the city's representations, and ordered the city to issue the final building permit.

Based upon the assumed validity of the facts pled in the instant case, there appears to be striking similarity between this cause and the *Crans* decision. The objections raised by F.D.O.T. in its letter dated August 21, 1986, are not different than F.D.O.T.'s earlier objections that were originally presented in the attachments to the Complaint in the FAA determination of "no hazard" and the F.D.O.T. objection before the ZAB. The only *consistent* position of F.D.O.T. in this matter is that F.D.O.T. lacks jurisdiction to either approve or disapprove the application and that its letter should not be construed as the disapproval of the permit request. The decision to approve or deny the requested permit, according to F.D.O.T., is purely a "local" one, and the local decision was made to issue the building permit, upon which Plaintiff appears to have justifiably and in good faith relied. For these reasons, the "extraordinary" writ of mandamus is legally justified, if not required, to address the "extraordinary" facts of this case.

6. Defendants raised various matters in their motion to dismiss that were not properly before the Court. These issues include: (1) whether Plaintiff waived its right to challenge the F.D.O.T. approval condition; (2) whether a mistake of fact or law gave rise to the issuance of the permit; and (3) whether a "new peril" exits that would justify revocation of the building permit. Because a motion t dismiss is not the proper method for raising or determining these types of defenses, this Court declines to reach the merits of those issues at this time. *Hembree v. Reaves, supra*; *Southeastern Title and Insurance Company v. Curtis*, 155 So.2d 855, 856 (Fla. 3d DCA 1963); *Nunez v. Alford*, 117 So.2d 208, 210 (Fla. 2d DCA 1960).

7. Defendants also moved to dismiss the Complaint on the grounds that Plaintiff has failed to exhaust its available administrative remedies before initiating this action for writ of mandamus. Although the doctrine of "exhaustion" of administrative remedies concerns the subject matter jurisdiction of the court and may be raised at any time, it is not an absolute bar. No litigant is required to exhaust an administrative remedy if that attempt appears to be futile. *See, e.g., Chatlos v. Overstreet*, 124 So.2d 1, 3 (Fla. 1960); *Bruce v. City of Deerfield Beach*, 423 So.2d 404, 406 (Fla. 4th DCA 1982). Moreover, existing administrative remedies need not be exhausted when such remedies would be too slow, incomplete, uncertain, or otherwise inadequate, as in the present case. *See Bishop v. Chillingworth*, 114 Fla. 286, 154 So. 254, 156 (Fla. 1934). The administrative remedies

that Defendants suggest are available to Taft are, in fact, the same steps previously taken by Taft to secure the initial zoning approval for its tower height increase and which brought the parties to the proceedings presently pending in this Court. Requesting relief from the same Board of County Commissioners that previously denied Taft's requested extension, only to be reversed by the Appellate Division of the Circuit Court, is futile and circuitous. Moreover, the exhaustion of these administrative procedures would be too slow; it took approximately three years from the filing of the initial request for zoning approval until the final decision of the Appellate Division of the Circuit Court to secure the approval of the tower height increase. Such a remedy is not what this Court considers to be "speedy" or "certain." The instant case falls squarely within the exceptions to the exhaustion doctrine, since to rule otherwise would require Taft to "reinvent the wheel" by once again requesting the approval of the tower expansion by the very governmental entity that denied such proposed expansion until reversed by the Appellate Division of the Circuit Court.

8. Finally, the Defendants' Motion to Dismiss is also predicated on the alleged failure of Taft to join the F.D.O.T. as an "indispensable" party to this proceeding. F.D.O.T.'s actions, inactions, ambiguous letters, and changes of position are not necessary to properly adjudicate the case at bar. Taft's allegations indicate that estoppel exists against the County regardless of the actions of the F.D.O.T., which has already taken the position, time and again, that it has no jurisdiction in this matter. An indispensable party is one whose interest in the subject matter of an action is such that if he is not joined, complete and efficient determination of the equities and the rights and liabilities of the other parties is not possible. *Kephart v. Pickens,* 271 So.2d 163, 164 (Fla. 4th DCA 1972). The F.D.O.T. has repeatedly taken the position, as set forth in its numerous letters on this matter, that the agency is not interested in this action because it does not have jurisdiction. Therefore, F.D.O.T. is not an indispensable party to this cause and, in all probability, is not even a necessary party.

Based upon the above and foregoing, it is,

ORDERED AND ADJUDGED:

1. That the Motion to Dismiss filed by Defendants is hereby denied.

2. That Defendants are hereby ordered to file their Response to the alternative writ within ten (10) days of the date of this Order.

DONE AND ORDERED in Chambers, this 7th day of August, 1987.